FILED

APR 22 2022

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

VANCE DOTSON ) JURY TRIAL DEMANDED
)
    Plaintiff, )
)
v. ) Case No.
)    22-CV-257-R
MIDLAND CREDIT MANAGEMENT )
INC., )
)
    Defendant. )
)
)

---

### RESPONSE TO DEFENDANT MIDLAND CREDIT MANAGEMENT, INC., MOTION TO DISMISS [7]

---

### I.   INTRODUCTION

Judge Russell, the main core question in this action, is the FDCPA a tort claim/law? The answer is NO. The question also becomes is there is a contract involved? YES.

The debt in this action is a consumer debt which arose with Credit One Bank from a consumer transaction, if Mr. Nickerson did not apply for the credit card this debt would not exist. Mr. Nickerson defaulted on the

personal credit card and Midland Credit Management untimely holds the consumer debt.

In American tort claims can not be transferred, Contracts can.

Defendant has not said "this is not a consumer debt not one time"

The FDCPA provides protection on this consumer debt and governs Midland Credit Management while attempting to collect on consumer debt.

Simply put no credit card company is just releasing credit cards without an application from a consumer and has to keep the application in file for two years 12 CFR 226.25(a).

> **CFR 1026.2(a) (8) *Cardholder* means a natural person to whom a credit card is issued for consumer credit purposes, or a natural person who has agreed with the card issuer to**
> pay consumer credit obligations arising from the issuance of a credit card to another natural person. For purposes of § 1026.12(a) and (b), the term includes any person to whom a credit card is issued for any purpose, including business, commercial or agricultural use, or a person who has agreed with the card issuer to pay obligations arising from the issuance of such a credit card to another person.
>
> **CFR 1026.2(a)(10)** *Closed-end credit* means <u>consumer</u> credit other than "open-end credit" as defined in this section.
>
> **CFR 1026.2(a)(11)** *Consumer* means a <u>cardholder</u> or **natural person to whom** <u>consumer</u> **credit is offered or extended**. However, for purposes of rescission under <u>§§ 1026.15</u> and 1026.23, the term also includes a natural <u>person</u> in whose principal <u>dwelling</u> a <u>security interest</u> is or

will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest. For purposes of §§ 1026.20(c) through (e), 1026.36(c), 1026.39, and 1026.41, the term includes a confirmed successor in interest.

**CFR 1026.2(a)( (12)** *Consumer credit* means **credit offered or extended to a consumer primarily for personal, family, or household purposes.**

**CFR 1026.2(a)( (13)** *Consummation* means the time that a **consumer becomes contractually obligated on a credit transaction.**

**CFR 1026.2(a)( (14)** *Credit* means the right to defer payment of debt or to incur debt and defer its payment.

**CFR 1026.2(a)(15)(i)** *Credit card* means any card, plate, or other single credit device that may be used from time to time to obtain credit. The term credit card includes a hybrid prepaid-credit card as defined in § 1026.61.

**A Credit Card is directly from a contract.**

**Transaction** definition from Cornell Law School:

> In business law, a transaction is an event associated with business dealings conducted between two or more parties that involve the formation and performance of an **obligation** or **contract**. The word transaction is frequently used in real estate and mergers and acquisitions markets.
>
> **In civil law, the word transaction may be used to refer to an agreement (commonly written in the form of a contract) reached between two or more parties whereby they make reciprocal concessions to prevent or end a dispute that might end up in litigation.** These types of agreements are also known as compromises or settlements.

## KEY ELEMENTS OF THE FDCPA

Schaefer v. Seattle Serv. Bureau, Inc. Case No: 2:15-cv-444-FtM-38CM (M.D. Fla. Dec. 15, 2015)

> 15 U.S.C. 1692a(3) The term "**consumer**" means any natural person **obligated** or **allegedly obligated** to pay any debt.

> 15 U.S.C. 1692a(5) The term "debt" means any **obligation** or **alleged obligation** of a consumer to pay money arising out of a **transaction** in which the money, property, insurance or **services** which are the subject of the **transaction** are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

Thus, to be subject to either the FDCPA, the "consumer debt" must therefore arise out of a "transaction." Although the statute defines "transaction," the Eleventh Circuit held in Hawthorne that, "at a minimum, a transaction under the FDCPA must involve some kind of business dealing or other consensual obligation." Hawthorne v. Mac Adjustment Inc., 140 F.3d 1367, 1371 (11th Cir. 1998). See also Baggett v Law Offices of Daniel Consuegra, (M.D. Fla. 2015) (transaction under FDCPA must involve some kind of business dealing or consensual obligation that creates and obligation to pay); Durso v. Summer Brook Preserve Homeowners' Association, 641 F. Supp. 2d 1256 (M.D. Fla. 2008 (debt must arise out of a transaction, necessarily meaning some type of business dealing between the parties; FDCPA's reach limited to consensual transactions between parties).

Hawthorne also involved a subrogation claim (TORT) on similar facts. The Hawthorne plaintiff was also in a car accident with a third party, the third party's insurer paid its insured's claim, the defendant collection service attempted to collect the subrogation claim and the plaintiff unsuccessfully sued for violations of the FDCPA. In construing the FDCPA in Hawthorne, the

Eleventh Circuit held that an obligation to pay a subrogation claim arising out of a car accident was not a consumer "debt" within the meaning of the FDCPA, because it did not arise from a transaction, and affirmed the lower court's order dismissing the claim:

Because [plaintiff's] alleged obligation to pay [defendant] for damages arising out of an accident does not arise out of any consensual or business dealing, plainly it does not constitute a "transaction under the FDCPA" because the FDCPA applies only to "debts arising from *consumer* transactions." Id at 1371. Rather, the plaintiff's obligation to pay the insurance company arose out of [plaintiff]'s negligence in the car accident. Because the obligation to pay arose from a car accident and not a consumer transaction, it was not a "debt" triggering application of the FDCPA, See id. at 1371, 1373.

... the FDCPA may be triggered **only** when an **obligation** to pay arises out of a **specified transaction.** Hawthorne, 140 F. 3d at 1371; Anderson v. Singletary, 111 F.3d 801, 804 (11th Cir.1997) (citing Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 314, 62 L. Ed. 2d 199 (1979)) ... "The ordinary meaning of 'transaction' necessarily implies some type of business dealing between parties ... In other words, when we speak of 'transactions,' we refer to consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence." Hawthorne, 140 F. 3d at 1371 (citing

Bass, 111 F.3d at 1326 ("[T]he FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services."))

... Schaefer's debt arose out of a tort created by her own negligence and not a transaction which would have created a consumer debt as required by the FDCPA ... and so does not constitute a consumer transaction. Accordingly, the court finds — applying Hawthorne — that Schaefer's claim does not fall under the protections established by the FDCPA because there was no transaction and no consumer debt.

**<u>Chimney Rock Ltd. P'ship v. Hongkong Bank of Can., 857 P.2d 84, 88 (Okla. Civ. App. 1993) (holding tort claims were assignable where "the alleged torts are grounded in the contracts and would not be capable of existing except for the contacts")</u>**

In American Law (the United States) tort claims can not transferred. That's not the case here because the FDCPA is not a tort law simply because there is a contract (a promise to pay) involved or else the FDCPA wouldn't apply by definition of the FDCPA.

## VANCE DOTSON STANDING

In the Supreme Court of The United States Sprint Communications Co., L.P., et al. v. APCC Services, Inc., et al No. 07-552 Argued April 21, 2008-Decided June 23, 2008.

**Vance Dotson does has standing to bring this claim(s)**

Held: An assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor. Pp. 3–23.

**12 Okla. Stat. 2017(D) "[t]he assignment of claims not <u>arising</u> out of contract is prohibited."**

Legal definition of Arose: Arise means **directly or indirectly, in whole or in part (i) to occur as a result of, (ii) to cause, or (iii) to result in.** Arise also means "[t]o originate; to stem (from)." Arise, Black's Law Dictionary (11th ed. 2019).

Legal meaning of "arising Out of a Contract Law and Legal Definition: The term "arising out of a contract" is defined as "**a claim that would not exist "but for" a contract**." See More Light Invs. v. Morgan Stanley DW Inc., 2009 U.S. Dist. LEXIS 112927 (D. Ariz. Nov. 17, 2009).

Chimney Rock Ltd. P'ship v. Hongkong Bank of Can., 857 P.2d 84, 88 (Okla. Civ. App. 1993) (holding tort claims were assignable where "the alleged torts are grounded in the contracts and would not be capable of existing except for the contacts").

### In the Supreme Court of The United States Sprint Communications Co., L.P., et al. v. APCC Services, Inc., et al No. 07-552 Argued April 21, 2008-Decided June 23, 2008.

**Mr. Nickerson Injuries transferred to Vance Dotson from the Assignment**

The history and precedents that we have summarized make clear that courts have long found ways to allow assignees to bring suit; that where assignment is at issue, courts--both before and after the founding-- have always permitted the party with legal title alone to bring suit; and that there is a strong tradition specifically of suits by assignees for collection. We find this history and precedent "well nigh conclusive" in respect to the issue before us: Lawsuits by assignees, including assignees for collection only, are "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U. S. 765, 777-778 (2000) (internal quotation marks omitted).

Petitioners argue, for example, that the aggregators have not themselves suffered any injury in fact and that the assignments for collection "do not

suffice to transfer the payphone operators' injuries." Brief for Petitioners 18. It is, of course, true that the aggregators did not originally suffer any injury caused by the long-distance carriers; the payphone operators did. But the payphone operators assigned their claims to the aggregators lock, stock, and barrel. See *APPC Servs.*, 418 F. 3d, at 1243 (there is "no reason to believe the assignment is anything less than a complete transfer to the aggregator of the injury and resulting claim); see also App. to Pet. for Cert. 114a (Agreement provides that each payphone operator "assigns, transfers and sets over" to the aggregator "all rights, title and interest" in dial-around compensation claims). And within the past decade we have expressly held that an assignee can sue based on his assignor's injuries. In *Vermont Agency, supra*, we considered whether a *qui tam* relator possesses Article III standing to bring suit under the False Claims Act, which authorizes a private party to bring suit to remedy an injury (fraud) that the United States, not the private party, suffered. We held that such a relator does possess standing. And we said that is because the Act "effect[s] a partial assignment of the Government's damages claim" and that assignment of the "United States' injury in fact suffices to confer standing on [the relator]." *Id.*, at 773, 774. Indeed, in *Vermont Agency* we stated quite unequivocally that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Id.*, at 773.

## MIDLAND CREDIT MANAGEMENT COMMUNICATED A DISPUTED DEBT

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. The statute prohibits debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The statute also prohibits "[c]ommunicating ... to any person credit information which is known or which should be known to be false, including the *failure to communicate that a disputed debt is disputed.*" 15 U.S.C. § 1692e(8) (emphasis added). **"When reporting a disputed debt, a debt collector bears a legal duty to communicate that the debt is disputed."** *Dixon v. RJM Acquisitions, LLC,* **640 F. App'x 793, 794 (10th Cir. 2016)** (unpublished). And when "the existence of a dispute involved a material issue of fact," summary judgment should be not granted. *Id.* at 795. For example, in *Dixon* the trial court granted summary judgment to a debt collector after finding that the debtor did not dispute the debt. The Tenth Circuit reversed, finding that the debtor's statements "I don't agree that I owe that much, that's too much," "I don't owe that much," and "I feel that all

I owe is $20" were disputes of a debt and therefore precluded summary judgment. *Id.* at 795.

**The Same Thing Midland Credit Management, Inc., says Vance Dotson Can Not Do, Does**

**The Attached Petition (CS-2022-3)**

1. Synchrony Bank Banana Republic VISA, provided credit to the defendant on account number XX3222. **The <u>Defendant defaulted on the obligation</u>. The has been <u>assigned</u> to Plaintiff.**

2. Defendant owes Plaintiff $8,169.17. An Affidavit of **<u>Account and/or contract</u>** is attached hereto and incorporated by reference.

This is a consumer debt that's has been allegedly assigned, only different venue. Midland Credit Management filed this action on March 30, 2022

## CONCLUSION

Plaintiff Vance Dotson does have a valid assignment by Mr. Nickerson, because of the assignment Mr. Nickerson damages is transferred to Plaintiff Vance Dotson. Plaintiff Vance Dotson has standing because of the assignment. The FDCPA is transferable/assignable because the FDCPA is not a tort claim, this debt arose from a contract. Plaintiff Vance Dotson request that Judge Russell DENIES the Motion to Dismiss.

Dated: April 22, 2022                    Respectfully submitted:

*Vance Dotson*

Vance Dotson
425 W. Wilshire Blvd Suite E

Oklahoma City, OK 73116

405.406.7323 (telephone)
vancedotson@yahoo.com (email)

## CERTIFICATE OF SERVICE

I hereby certify that on the 21th day of April, 2022, a true and correct copy of the above and foregoing was deposited in the U.S. Mail, first class, postage pre-paid, addressed to:

Jon Brightmire

Two West Second Street, Suite 700

Tulsa, OK 74103